E-FILED
Friday, 28 March, 2025  02:54:48 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-04113-SLD |
| | ) | |
| $38,916.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Plaintiff United States of America's Motion for Summary Judgment,

ECF No. 37.[1]  For the following reasons, the motion is GRANTED.

BACKGROUND[2]

In February 2020, Claimant Michael Angelo Tovar sold cocaine to a confidential

informant on two occasions, totaling approximately 2 grams.  In March 2020, police arrested

Tovar at a bar and found $416 in U.S. currency and 1.8 grams of cocaine on his person.  Police

then obtained a warrant to search Tovar's residence where they found: $38,500 in U.S. currency,

consisting of $5,000 in the pocket of a jacket in the bedroom closet and $33,500 inside a cracker

box under a floor vent in the bedroom; a pistol and a loaded magazine in another pocket of the

same jacket; 164 grams of marijuana; 29.7 grams of cocaine; a digital scale; one round of

---

[1] ECF references and other citations correspond to the docket of 4:21-cv-04113-SLD unless otherwise specified.
[2] At summary judgment, the court must construe all facts and draw all reasonable inferences in favor of the nonmoving party.  *United States v. Funds in Amount of One Hundred Thousand One Hundred and Twenty Dollars ($100,120.00)*, 730 F.3d 711, 716 (7th Cir. 2013) [hereinafter *$100,120*].  Unless otherwise noted, the factual background of this case is drawn from the Government's statement of undisputed material facts, Mot. Summ. J. 3–5; Tovar's statement of disputed material facts and additional material fact, Resp. Mot. Summ. J. 2–3, ECF No. 38; the Government's reply to Tovar's additional material fact, Reply Mot. Summ. J. 2–4, ECF No. 39; and exhibits to the filings.

ammunition on a dresser in the bedroom; and inositol powder (a substance often used for cutting cocaine before sale) on the same dresser.

On June 16, 2020, a grand jury indicted Tovar on five counts: Counts 1 & 2 charged him with distributing cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; Count 3 charged him with possessing with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), (b)(1)(D) and 18 U.S.C. § 2; Count 4 charged him with possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2; and Count 5 charged him with possessing a firearm and ammunition as a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). *See generally* Indictment, Mot. Summ. J. Ex. 1, ECF No. 37-1. The indictment contained a notice of forfeiture which provided that upon conviction of the drug crimes, Tovar "shall forfeit to the United States any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the aforesaid violations, including, but not limited to $38,916 in United States currency seized on March 2, 2020, from the residence at 2413 15th Street, Moline, Illinois, and from the person of the defendant." *Id.* at 4. Tovar pleaded guilty to all counts on May 4, 2021, but contested the forfeiture of the $38,916.

Tovar submitted a sentencing memorandum wherein "he denie[d] that the funds at issue were drug proceeds but were in fact proceeds from the sale of used cars." Sent'g Mem. 5, Mot. Summ. J. Ex. 2, ECF No. 37-2. On October 25, 2022, the Court held a sentencing hearing during which it addressed Tovar's objection to the conversion of cash to drug weight used in calculating his sentencing guidelines range. Tovar argued that the $38,916 constituted proceeds from auto sales and therefore it was inappropriate for the Court to convert the currency into drug weight when determining Tovar's base offense level.

The Court rejected Tovar's claim that the $38,916 was derived from "automobile transactions or any other type of legitimate source," Sent'g Hr'g Tr. 17:21–18:3, Mot. Summ. J. Ex. 3, ECF No. 37-3, after finding that the records presented by Tovar regarding auto sales did not account for the large amount of cash found and that the transactions did not occur around the relevant time period. It further noted that the records "indicate[d] that the defendant has bank accounts, frequents the bank to conduct transactions, and yet this cash that was found . . . in a Cracker Jack box hidden in the floorboards of a vent, which is not the typical way for legitimate funds to be stored." *Id.* at 18:24–19:6. The Court concluded that the location of the drugs and drug sale paraphernalia near the currency supported the reasonable inference that the $38,916 constituted drug sales proceeds.

> The location of the cash proceeds in proximity to not only the marijuana but also cocaine as well as cocaine that was packaged for sale, three different baggies in sale amounts as well as with other tools of the distribution trade present in proximity to the cash, notably a scale as well as Inositol, which is known to be a cutting agent for cocaine, that based on the burden at play here in a sentencing hearing, is -- the Court can make a reasonable inference that the location of drug distribution materials and drugs to the cash supports that it was proceeds from the sale of [drugs].

*Id.* at 18:11–23. Though it decided that the currency was from drug sales, the Court could not conclusively determine whether the cash emanated from the sale of cocaine or from the sale of marijuana. *See id.* at 20:18–21 ("I'm uncomfortable, without more evidence to attribute the cash to which type of substance, that that's really a fair assessment and way to employ the drug equivalency."). The Court recognized that the cocaine-equivalent of the cash would "ha[ve] a much greater impact" on Tovar's sentencing guidelines range than the marijuana-equivalent. *Id.* at 19:18–20:10.

In total, Tovar possessed 33.57 grams of cocaine, 164.4 grams of marijuana, and $38,916 in U.S. currency. On its own, without converting the currency to drug weight, possession of

33.57 grams of cocaine and 164.4 grams of marijuana results in a base offense level of 12. The United States Sentencing Commission Guidelines Manual ("Guidelines") allows a court to "approximate the quantity of the controlled substance" where "the amount [of drugs] seized does not reflect the scale of the offense." U.S. Sent'g Guidelines Manual § 2D1.1 cmt. 5 (U.S. Sent'g Comm'n 2021). At the time of sentencing, the price for one gram of cocaine was $100, meaning that $38,916 was equivalent to 389.16 grams of cocaine, resulting in a base offense level of 20. Second Revised Presentence Investigation Report ("Second Revised PSR") ¶ 24, *United States v. Tovar*, No. 4:20-cr-40023-SLD (C.D. Ill. Oct. 18, 2022), ECF No. 66 (citing U.S. Sent'g Guidelines Manual § 2D1.1(c)(10)). The price for one pound of marijuana was $2,000, meaning that $38,916 was equivalent to 19.45 pounds or 8.8 kilograms of marijuana, resulting in a base offense level of 12. *Id.* (citing U.S. Sent'g Guidelines Manual § 2D1.1(c)(14)).

The Court recognized that whether it converted the $38,916 into its equivalent in cocaine or marijuana would make a significant impact on the base offense level and sentencing guidelines range for Tovar. The Court decided to "give [Tovar] the benefit of the doubt" and apply the marijuana-equivalent of the currency, rather than the cocaine-equivalent, resulting in a base offense level of 12. Sent'g Hr'g Tr. 20:22–21:3.

On appeal, Tovar argued that the Court erred when it converted the $38,916 to its equivalent weight in marijuana, maintaining that the "cash instead came from buying, repairing, and re-selling used cars." *United States v. Tovar*, 88 F.4th 720, 725–26 (7th Cir. 2023). The Seventh Circuit rejected that argument and affirmed this Court's conversion of the cash to marijuana weight because "when there is a sufficient basis to believe that cash found in a defendant's possession was derived from drug sales, a court properly includes the drug

equivalent of that cash in the drug-quantity calculation." *Id.* at 725 (alterations and quotation marks omitted).

The Government filed this civil forfeiture action on July 1, 2021, Compl., ECF No. 1, and moved for summary judgment on January 16, 2025.

## DISCUSSION

### I.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must construe all facts and draw all reasonable inferences in favor of the nonmovant. *United States v. Funds in Amount of One Hundred Thousand One Hundred and Twenty Dollars ($100,120.00)*, 730 F.3d 711, 716 (7th Cir. 2013) [hereinafter *$100,120*].

Pursuant to 21 U.S.C. § 881(a)(6), the Government may bring a civil forfeiture action against

> [a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [the Controlled Substances Act, 21 U.S.C. §§ 801–904 ("the Act")], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [the Act].

The Government bears the burden of proving, by a preponderance of the evidence, that the property is subject to forfeiture because it is "either the proceeds of an illegal drug transaction, or w[as] intended to facilitate such a transaction." *$100,120*, 730 F.3d at 716 (first citing 18 U.S.C. § 983(c)(1); and then citing 21 U.S.C. § 881(a)(6)). In determining whether the preponderance-of-the-evidence standard has been met, courts consider the totality of the circumstances. *United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448,

469 (7th Cir. 2005). Where, as here, "the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." *Id.* at 454 (quoting 18 U.S.C. § 983(c)(3)).

Once the movant has set forth the basis for summary judgment, the burden then shifts to the nonmovant who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). To defeat summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The nonmovant must offer more than "[c]onclusory allegations, unsupported by specific facts" to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## II.    Analysis

The Government puts forth two bases for entering summary judgment in its favor: (1) Tovar's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because a judgment in his favor in this civil forfeiture case would undermine the validity of his conviction or sentence in the underlying criminal case, and (2) issue preclusion bars Tovar from relitigating the source of the money. Mot. Summ. J. 7–16.

### a. *Heck* Bar

Tovar argues that the *Heck* doctrine is intended for and has predominantly been applied to suits for monetary damages under 42 U.S.C. § 1983, as opposed to the situation here where Tovar is "challenging the legality of a government forfeiture action." Resp. Mot. Summ. J. 2,

ECF No. 38. Tovar emphasizes that the Government cites no binding precedent that "stand[s] for the proposition that *Heck*-bars should apply to forfeiture actions" and instead only cites out-of-circuit cases. *Id.* Tovar additionally argues that *Heck* does not apply here because a judgment in his favor would *not* imply the invalidity of his conviction or sentence because the conversion of the currency into drug weight ultimately had no impact on his advisory guideline calculations. *Id.*; *see also id.* at 6 ("[W]ith the conversion of cash to drugs ultimately playing no role in his final advisory guideline calculations, it is difficult to see how it could have played any role in his ultimate sentence—such that Mr. Tovar would be entitled to any re-sentencing.").

The Court is not persuaded by the Government's application of the *Heck* doctrine to this case. *Heck* applies when a judgment in the plaintiff's favor "would *necessarily* imply the *invalidity* of his conviction or sentence." *Heck*, 512 U.S. at 487 (emphasis added). The Supreme Court has "stress[ed] the importance of the term 'necessarily.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence."). The Government asserts that "[t]he *Heck* doctrine would bar Tovar from bringing a civil suit claiming that the cocaine was planted, just as it bars him from now claiming that the currency was lawfully derived," Reply Mot. Summ. J. 7, ECF No. 39—but this is an incorrect statement of the law. In *Heck*, the Supreme Court recognized that a plaintiff may be able to proceed with a suit challenging the legality of a search even if his conviction had been upheld because doctrines such as independent source, inevitable discovery, and harmless error "would not *necessarily* imply that the plaintiff's conviction was unlawful." *Heck*, 512 U.S. at 487 n.7.

Even assuming that Heck can be applied to civil forfeiture actions, the Government has

not shown why a judgment in Tovar's favor in this civil forfeiture action would necessarily

undermine the validity of his criminal convictions and/or sentence. In moving for summary

judgment, the Government initially asserted that "[t]he conversion of the currency to marijuana

weight enhanced Tovar's Sentencing Guidelines range." Mot. Summ. J. 5. In its reply, though,

the Government concedes that "the base offense level for the drug offenses would have been a 12

regardless of whether the currency was converted to marijuana weight." Reply Mot. Summ. J. 7.

The Government asserts that it "is not entirely correct" that the conversion of the money

to marijuana weight "had no impact on his guideline computations," Reply Mot. Summ. J. 6

(quoting Resp. Mot. Summ. J. 2), and notes that "[t]he Court addressed this issue at the outset of

the sentencing hearing, explaining that 'because of the grouping it would actually have an impact

on the final guideline range,'" *id.* (quoting Sent'g Hr'g Tr. 7:4–5). The Government's argument

confuses what *could* have happened with what *actually* happened. Where, as here, a defendant

has been convicted of multiple counts, the counts of conviction can be grouped pursuant to

§ 3D1.1 of the Guidelines. Here, the grouping calculation is wholly dependent on the base

offense level for the drug counts.[3] As explained above, if the Court had used the cocaine-

equivalent of the money, Tovar's base offense level for Counts 1–3 would have been 20. If the

Court had followed the recommendation in the Second Revised PSR and split the difference

between the cocaine-equivalent (20) and the marijuana-equivalent (12), his base offense level for

---

[3] The Court does not address Count 4 here because it was excluded from the grouping rules due to the statutorily required consecutive sentence. Second Revised PSR ¶ 32. The Guidelines require that the Court group multiple counts "into distinct Groups of Closely Related Counts" which resulted in Count 5 (Felon in Possession of Firearm and Ammunition) being one group and Counts 1–3 (Drug Counts) being a second group. U.S. Sent'g Guidelines Manual § 3D1.1(a)(1); Second Revised PSR ¶¶ 32–47. The Second Revised PSR shows that no adjustments were made related to Specific Offense Characteristics, Victim Related Adjustments, Role in the Offense, or Obstruction of Justice, meaning that Tovar's base offense level was the same as his adjusted offense level. Second Revised PSR ¶¶ 35–46.

8

Counts 1–3 would have been 16.  Second Revised PSR ¶ 34.  But the Court did neither and instead used the marijuana-equivalent, such that his base offense level for Counts 1–3 was 12.

The Court's decision to use the marijuana-equivalent means that the Government's assertion—that a finding in Tovar's favor in this civil case would somehow invalidate his criminal sentence—is incorrect.  As stated above, Tovar already had a base offense level of 12 based on the quantity of marijuana and cocaine he possessed, *see* U.S. Sent'g Guidelines Manual § 2D1.1(c)(14), meaning that even if the Court had determined that $38,916 came from legitimate sources, as Tovar argued, that finding would not have changed his base offense level, or grouping, or ultimate advisory guideline calculations.[4]  In sum, "that amount of cash" converted to marijuana weight as the Court did here, "wouldn't impact the guideline range or the base offense level of 12."  Sent'g Hr'g Tr. 21:11–14.[5]  This begs the question: If the Court were to find in this civil forfeiture action that the $38,916 did *not* constitute proceeds from drug sales, how would that *inevitably invalidate* Tovar's conviction or sentence?  The Government fails to answer this question which is integral to the *Heck* doctrine.

---

[4] Units are assigned pursuant to § 3D1.4(a)–(c) of the Guidelines.  One unit is assigned to the group with the highest offense level.  Here, that is Count 5 with an adjusted offense level of 20.  One additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious.  One-half unit is assigned to each group that is 5 to 8 levels less serious than the highest offense level.  *See* Second Revised PSR ¶ 47.

[5] The table below enumerates the different possible scenarios to demonstrate how the Court's consideration of the $38,916 as drug proceeds could have impacted Tovar's sentencing guidelines calculation based on grouping rules.

| Application of $38,916 as Drug Proceeds | Base/Adjusted Offense Level | Units | Total Number of Units | Increase in Offense Level | Combined Adjusted Offense Level |
|---|---|---|---|---|---|
| Marijuana-equivalent | 12 | 0.5 | 1.5 | 1 | 21 |
| Second Revised PSR Recommendation | 16 | 1.0 | 2.0 | 2 | 22 |
| Cocaine-equivalent | 20 | 1.0 | 2.0 | 2 | 22 |
| Without factoring in the $38,916 as drug proceeds | 12 | 0.5 | 1.5 | 1 | 21 |

b. **Issue Preclusion**

Although *Heck* does not bar Tovar's claim, issue preclusion does. "[T]he issue-preclusion principle means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Bravo-Fernandez v. United States*, 580 U.S. 5, 7–8 (2016) (quotation marks omitted). Issue preclusion applies when four conditions are met:

> 1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom [issue preclusion] is invoked must be fully represented in the prior action.

*Waagner v. United States*, 971 F.3d 647, 657 (7th Cir. 2020) (quotation marks omitted). The Government asserts that all four of these elements are met. Mot. Summ. J. 11–16. Tovar's only response is that "[he] believes there are additional factual aspects to be developed—which would tip the ownership of the proceeds back in his favor." Resp. Mot. Summ. J. 7. The Court addresses each element in turn.

First, the issue sought to be precluded here is the same as in Tovar's criminal case—namely, whether the $38,916 constitutes proceeds from drug sales. In Tovar's criminal case, this Court made the factual determination that the $38,916 was proceeds from the sale of drugs. *See, e.g.*, Sent'g Hr'g Tr. 18:19–23. On direct appeal, the Seventh Circuit affirmed this Court's decision and Tovar's sentence, recognizing that there was "a sufficient basis to believe that the cash was derived from drug sales." *Tovar*, 88 F.4th at 726 (quotation marks omitted).

Second, the issue was actually litigated in Tovar's criminal case. "The 'actually litigated' requirement simply requires the issue to have been raised, contested by the parties, submitted for determination by the court, and determined." 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.03 (Matthew Bender 3d ed. 2025). Issue preclusion does not apply where the

party against whom issue preclusion is asserted did not have (1) a "full and fair opportunity" to litigate the issue in the prior suit, "where 'opportunity' includes incentive—the parties could foresee that the same issue might arise in a future litigation in which the winner would assert [issue preclusion]," and (2) "a meaningful opportunity to appeal the resolution of the issue." *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013). A party "is presumed to have had a full and fair opportunity to litigate" where he "is represented by counsel, had ample opportunity to present evidence and exhibits, and also had appellate review." *Studio Art Theatre of Evansville, Inc. v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996).

To the extent Tovar argues that he did not have a full and fair opportunity to litigate the issue of the source of the $38,916 because "he twice attempted (but for certain reasons was not allowed) to proffer his own elaboration for the lawful presence of the cash in his home at the time of the search," Resp. Mot. Summ. J. 3, the Court rejects that argument. Prior to his sentencing, Tovar submitted a sentencing memorandum with documentary evidence purporting to show that the cash was lawfully derived from auto sales. *See generally* Sent'g Mem. During the sentencing hearing, Tovar directly addressed the Court and tried to explain that he kept the cash hidden in his house to avoid paying child support. *E.g.*, Sent'g Hr'g Tr. 45:8–46:14. Cognizant that Tovar's allocution might "make things worse for [him]," the Court allowed him several opportunities during the hearing to confer with his attorney off-the-record, *e.g.*, *id.* at 46:15–21, after which Tovar did not press the issue further. The evidence presented by Tovar contradicts his assertion that he "was not allowed" to explain the "lawful presence of the cash in his home" and does not raise a genuine issue of material fact as to whether he had a full and fair opportunity to litigate the issue.

11

Additionally, Tovar had ample incentive to vigorously litigate the source of the funds in his criminal case, knowing that it could have an impact on the calculation of his guidelines range, and obviously the parties foresaw that the issue would arise in the instant civil forfeiture action, which was filed before Tovar's sentencing.  *See, e.g.*, *id.* at 16:1–4 ("[Tovar's Attorney]: Well, we'll make the objection to the conversion, reserve the issue for the forfeiture.  I'm not doing the forfeiture; that's a private action."); Sent'g Mem. 5 ("Tovar will only be objecting to the use of the cash in calculating the guidelines sentencing range to remain consistent with, and to preserve his claim in his civil forfeiture action in case number 4:21-cv-04113 now pending before this Court.").

Moreover, Tovar had a meaningful opportunity for appellate review because he raised the same issue on appeal, arguing that "because there were insufficient bases[,] the District Court's ruling that the cash was the result of drug sales was a clear error."  Appellant Br. 22, *United States v. Tovar*, 88 F.4th 720 (7th Cir. 2023) (No. 22-3024), Doc. 22.  The Seventh Circuit rejected that argument and found that, based on the evidence, there was "a sufficient basis to believe that the cash was derived from drug sales," *Tovar*, 88 F.4th at 726, and held that this Court did not clearly err when it found that the $38,916 constituted drug proceeds and converted that currency into drug weight.  The fact that Tovar had appellate review of this Court's decision in his criminal case further supports the application of issue preclusion.  *See Bravo-Fernandez*, 580 U.S. at 10 (recognizing that issue preclusion "is premised on an underlying confidence that the result achieved in the initial litigation was substantially correct" and that appellate review bolsters such confidence (quotation marks omitted)).

Third, the Court's determination that the $38,916 was derived from drug sales was essential to its final judgment.  In fashioning an appropriate sentence, a court must first correctly

12

calculate the applicable guidelines range, *Gall v. United States*, 552 U.S. 38, 49 (2007), which begins with determining the defendant's base offense level. For drug crimes, "a defendant's base offense level is largely a function of the amount of drugs involved in his offense," and therefore "courts are required to explicitly state their drug-quantity findings in arriving at the appropriate sentence." *United States v. Garrett*, 757 F.3d 560, 572 (7th Cir. 2014) (quotation marks omitted). As discussed above, the conversion of the $38,916 into marijuana weight did not change Tovar's base offense level of 12 for the drug counts. But the Court did incorporate its finding that the currency constituted drug sale proceeds into the determination of Tovar's ultimate sentence. In discussing the 18 U.S.C. § 3553(a) factors and the seriousness of the offense conduct, the Court opined that the $38,916 was "an indicator -- with the method in which the cash was stored, its location, and the amount -- that things were a little bigger or at least steadier than perhaps is revealed by what you were caught . . . selling which was the one-gram quantities." Sent'g Hr'g Tr. 51:1–52:5.

And finally, Tovar was fully represented by counsel in his criminal case, including on direct appeal. *See, e.g.*, Entry of Appearance, *United States v. Tovar*, No. 4:20-cr-40023 (C.D. Ill. Apr. 26, 2021), ECF No. 29 (showing that Attorney Nate Nieman appeared on behalf of Tovar); Appearance & Circuit Rule 26.1 Disclosure Statement, *United States v. Tovar*, 88 F.4th 720 (7th Cir. 2023) (No. 22-3024), Doc. 2 (showing that Attorney Murray W. Bell appeared on behalf of Tovar).

Courts are rightfully circumspect when applying issue preclusion from sentencing proceedings to civil litigation. Mindful of potential unfairness, courts should be cautious and apply issue preclusion "only in those circumstances where it is clearly fair and efficient to do so." *United States v. Clark*, 906 F.3d 667, 671 (7th Cir. 2018) (quoting *SEC v. Monarch*

13

*Funding Corp.*, 192 F.3d 295, 306 (2d Cir. 1999)).  Here, the Court finds that it is "clearly fair and efficient" to apply issue preclusion because the issue of the source of the currency was fully and fairly litigated in Tovar's criminal case.  The Government has met its burden of showing by a preponderance of the evidence that the $38,916 is subject to forfeiture, *see $100,120*, 730 F.3d at 716, and Tovar has presented no evidence that would raise a genuine dispute as to that finding.  Accordingly, the Court GRANTS the Government's Motion for Summary Judgment.

**CONCLUSION**

For the foregoing reasons, Plaintiff United States of America's Motion for Summary Judgment, ECF No. 37, is GRANTED.  The Clerk is directed to enter judgment and close the case.

Entered this 28th day of March, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE